

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

**ENTERED**
**01/04/2011**

| | | |
|---|---|---|
| IN RE: | § | |
| CAPCO ENERGY, INC.; fka AMCO | § | CASE NO: 08-32282 |
| PETROLEUM, INC. | § | |
| Debtor(s) | § | |
| | § | CHAPTER  11 |
| | § | |
| CAPCO ENERGY, INC., *et al* | § | |
| Plaintiff(s) | § | |
| | § | |
| VS. | § | ADVERSARY NO. 10-3130 |
| | § | |
| MCMORAN OIL & GAS, LLC, *et al* | § | |
| Defendant(s) | § | |

## MEMORANDUM OF DECISION
## SUMMARY JUDGMENT
## (DOC ## 26, 27, 28, 30)

Capco Energy, Inc. *et al* ("Debtors") owned working interests in mineral production known as "SS 159."  Debtors were also the operators of the well.  McMoRan Oil & Gas LLC ("McMoRan") also owned working interests in SS 159.  Shortly after filing a voluntary petition commencing these bankruptcy cases, Debtors sold their working interests to Hoactzin Partners, LP ("Hoactzin").  This adversary proceeding puts at issue liability for approximately $336,683.57 of gas imbalance from sales of production from SS 159.  The parties have submitted cross motions for summary judgment, and the Court concludes that the material facts are undisputed.  Therefore, for reasons set forth below and by separate final judgment, the Court awards judgment for the gas imbalance against Hoactzin (and partially also against Debtors) in favor of McMoRan and dismissing all other claims.

## UNDISPUTED FACTS

Prior to the commencement of these bankruptcy cases, Debtors and McMoRan both owned working interests in SS 159, and Capco (one of Debtors) was the operator and the Platform Operator of the well.[1]  By contract among the working interest owners, the proceeds from gas production from SS 159 were commingled for sale with gas from other wells, revenues were divided on estimates, records were kept and exchanged, and procedures were established for resolving imbalances.  Working interest owners who had been paid too much were required to pay the working interest owners who had received too little.  Working interest owners were required to settle imbalances in the 30 days following the production month ("Gas Balancing").

---

[1] Debtor engaged a contract operator, but that is not significant to this decision.

Debtors filed voluntary petitions commencing these cases under chapter 11 of the Bankruptcy Code on April 7, 2008.  Debtors entered into a purchase and sale agreement (PSA) with Hoactzin to sell their working interest in SS 159 effective August 11, 2008.  The Court approved the sale after hearing and the sale was consummated.

Gas balancing was not accomplished from September, 2007, through February, 2010.  It is undisputed that the gas imbalance with respect to the interest that Debtors sold to Hoactzin for that period (in McMoRan's favor) is:

- $143,989.75 for the period September, 2007, through April 7, 2008 (*i.e.* pre-bankruptcy sales);
- $144,592.59 for the period April 7, 2008, through August 11, 2008 (sales from the bankruptcy petition date through the effective date of the sale); and
- $48,101.23 for the period from August 12, 2008, through February, 2010 (subsequent to the sale).

The total of these amounts is $336,683.57.[2]

The PSA defines Hoactzin as "Buyer" and Capco (one of Debtors) as Seller of the SS 159 interest.  Paragraph 16.01 of the PSA states:

> 16.01  Buyer Assumption of Seller Position.  For those Subject Interests with cumulative gas-production-imbalance accounts among working interest owners, after the Effective Time, all benefits, obligations, and liabilities associated with these gas-production-imbalance accounts and related agreements will accrue to and become Buyer's responsibility.  Buyer will assume Seller's overproduced or under produced position as of the Effective Time.  Any gas imbalances attributable to the Subject Interests presently known to Seller are disclosed on Schedule 4.04(n) attached hereto.  If Seller has an overproduced position (i.e. a negative gas balance) that is assumed by Buyer, Buyer may seek reimbursement from Seller according to the provisions in Paragraph 16.02 below.  [Emphasis in original.][3]

PSA Paragraphs 17.01 and 17.02 provide:

> 17.01  Preparation.  Within ninety (90) days after the Closing Date, Seller and Buyer shall each prepare a final Closing Settlement Statement.  These final Closing Settlement Statements shall set forth, for the time period from July 1, 2008 to the date of the

---

[2] The total in the first sentence of paragraph 32 of McMoRan's motion for summary judgment and in exhibit 4 to the Gonzalez Declaration is $336,683.58.  There is presumably a math error relating to rounding.  The Court has used the sum of the subparts.

[3] PSA Paragraph 16.02 provides that Buyer may only seek reimbursement if the imbalance due exceeds certain thresholds.  That limitation is not relevant here because it was exceeded.

statement, the amount of revenues attributable to the Subject
Interests received by Seller and Buyer, respectively, as well as all
lease operating expenses and joint interest billings.  The statement
of Seller and Buyer shall set forth the amount or revenue and
expenses received or billed to each, as the case may be, which
should have been received or billed to the account of the other
party in accordance with the provisions hereof.  Buyer's statement
to seller shall set forth the total amount, if any, of all Qualified gas
imbalance Clams made if the Deductible Amount threshold has
been reached…

17.02 <u>Final Settlement.</u>  If monies are owed by either Buyer or
Seller to the other under the final Closing Settlement Statement,
including any gas imbalance reimbursement or indemnification
from Seller … the party owing the funds shall remit them to the
other party within seven (7) days of receipt of the final Closing
Settlement Statement …

Debtors' bankruptcy schedules (referenced in PSA paragraph 16.01) do not disclose the
true gas balancing imbalance for the period September, 2007, through the effective date of the
sale.

## JURISDICTION

This is an adversary proceeding, a civil proceeding, arising in a case under title 11 and
arising under title 11 of the United States Code.  The United States District Court has jurisdiction
under 28 U.S.C. § 1334(b).  By Order dated August 9, 1984, superseded by General Order 2005-
6 on March 10, 2005, under authority granted by 28 U.S.C. § 157(a), the United States District
Court for the Southern District of Texas referred all such proceedings to the bankruptcy judges
for the district.  This is a core proceeding as defined by 28 U.S.C. § 157(b)(2)(L) and (N).  The
bankruptcy judge may hear and may determine core proceedings, 28 U.S.C. 157(b)(1).

In the order confirming the chapter 11 Plan, the Court reserved jurisdiction to interpret
the order and related matters.  The parties have stipulated to jurisdiction over the subject matter.
The Court concludes that it has jurisdiction over the subject matter.  No party has objected to the
exercise of core jurisdiction by the undersigned bankruptcy judge.

## PARTIES TO THIS ADVERSARY PROCEEDING AND CLAIMS

The Complaint in this adversary designates the Plaintiffs as "Capco Energy, Inc f/k/a
Amco Petroleum, Inc, Amco Energy, Inc. f/k/a Capco Offshore, Inc (collectively, "Capco" or
"Defendants"[4] or "Debtors"), acting by and through its Plan Trustee…"  The Plan Trustee, *qua
trustee*, is not designated in the Complaint as a party.

---

[4] It is not clear why the complaint designates the Plaintiffs as Defendants.  Presumably this was just an
error.

The Complaint seeks a judgment:
- Prohibiting McMoRan from asserting any claim in violation of the Plan and applicable bankruptcy law; and
- Enjoining McMoRan from asserting against Hoactzin its claims for alleged gas imbalances attributable to the Debtors; and
- Damages, interest, and attorneys' fees.

McMoRan filed a cross-claim against Hoactzin for the amount allegedly due for Gas Balancing.

Hoactzin filed a counterclaim against Debtors for indemnity and contribution if the Court concluded that Hoactzin was liable to McMoRan on the Gas Balancing claim.

McMoRan and Hoactzin filed motions for summary judgment.[5]  Debtors opposed both.

SUMMARY JUDGMENT STANDARD

Summary judgment should be granted "if the pleadings, the discovery, and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED R. CIV. P. 56(c); *Gray Law LLP v. Transcon. Ins. Co.*, 560 F.3d 361, 365 (5th Cir. 2009). Federal Rule of Bankruptcy Procedure 7056 incorporates Rule 56 in adversary proceedings.[6]

A party seeking summary judgment must demonstrate: (i) an absence of evidence to support the non-moving party's claims or (ii) an absence of a genuine issue of material fact. *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009); *Warfield v. Byron*, 436 F.3d 551, 557 (5th Cir. 2006).  A genuine issue of material fact is one that could affect the outcome of the action or allow a reasonable fact finder to find in favor of the non-moving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008) ("A genuine issue of material fact exists if a reasonable jury could enter a verdict for the non-moving party."); *James v. Tex. Collin County*, 535 F.3d 365, 373 (5th Cir. 2008).  A court views the facts and evidence in the light most favorable to the non-moving party at all times.  *Campo v. Allstate Ins. Co.*, 562 F.3d 751, 754 (5th Cir. 2009); *LeMaire v. La. Dept. of Transp. & Dev.*, 480 F.3d 383, 387 (5th Cir. 2007).

---

[5] Debtor filed responses to McMoRan and to Hoactzin's motions for summary judgment.  Those responses include requests for judgment in Debtor's favor.  The Court treats Debtors' responses as motions for summary judgment.

[6] Rule 56 was amended, effective December 1, 2007.  Although most changes were stylistic, the changes to Rule 56(c) were substantive.  Prior to the amendment, Rule 56(c) provided that the Court "shall" grant summary judgment if the relevant criteria were met.  Effective December 1, 2007, the word "shall" was changed to "should".  The Committee Notes to the 2007 amendment state that the word "[s]hould" was substituted for "shall" to recognize that, "although there is no discretion to enter summary judgment when there is a genuine issue as to any material fact, there is discretion to deny summary judgment when it appears that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56 advisory committee's notes (2007). As one commentator noted, "even when a motion for summary judgment is properly made and supported, it need not be granted . . . [s]uch a motion may be granted - indeed, it should be granted - but it does not have to be granted."  Bradley S. Shannon, *Should Summary Judgment Be Granted?*, 58 Am. U. L. Rev. 85, 95 (2008).

Nevertheless, a court is not obligated to search the record for the non-moving party's evidence. *Malacara v. Garber*, 353 F. 393, 405 (5th Cir. 2003). The Court should not weigh the evidence inasmuch as a credibility determination may not be part of the summary judgment analysis. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

"The moving party bears the burden of establishing that there are no genuine issues of material fact." *Norwegian Bulk Transp. A/S v. Int'l Marine Terminals P'ship*, 520 F.3d 409, 412 (5th Cir. 2008). The evidentiary support needed to meet the initial summary judgment burden depends on whether the movant bears the ultimate burden of proof at trial.

If the movant bears the burden of proof on an issue, a successful motion must present evidence that would entitle the movant to judgment at trial. *Malacara v. Garber*, 353 F.3d 393, 403 (5th Cir. 2003); *Chaplin v. Nationscredit Corp.*, 307 F.3d 368, 372 (5th Cir. 2002) (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)). Upon an adequate showing, the burden shifts to the non-moving party to establish a genuine issue of material fact. *Sossamon*, 560 F.3d at 326; *U.S. v. 92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008). The non-moving party has a duty to respond with specific evidence demonstrating a disputed fact issue. *Celotex Corp. Cattret*, 477 U.S. 317, 324, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *92,203.00 in United States Currency*, 537 F.3d at 507. When identifying specific evidence in the record, the non-movant must "articulate the manner in which that evidence supports that party's claim." *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir. 2004); *Raga v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

If the movant does not bear the burden of proof, the movant must show the absence of sufficient evidence to support an essential element of the opposing party's claim. *Norwegian Bulk Transp. A/S*, 520 F.3d at 412; *Ballard v. Burton*, 444 F.3d 391, 396 (5th Cir. 2006). Movants who do not bear the ultimate burden of proof often seek summary judgment after discovery has produced insufficient evidence to support the non-moving party's claims. Upon an adequate showing of insufficient evidence, the non-movant must respond with sufficient evidence to support the challenged element of its case. *Celotex*, 477 U.S. at 324. The non-movant must "go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue" rather than relying on conclusory allegations. *Adams v. Travelrs Indem. Co.*, 465 F.3d 156, 163–64 (5th Cir. 2006); *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007). Ultimately, the motion should be granted if the non-moving party cannot produce evidence to support an essential element of its claim. *Condrey v. Suntrust Bank of Ga.*, 431 F.3d 191, 197 (5th Cir. 2005).

CONCLUSIONS

A.    McMoRan's Motion for Summary Judgment Against Debtors[7]

1.    "Debt," "Claim," "Allowable Claim" and Discharge

Debtors and Hoactzin both argue that McMoRan missed certain deadlines for filing a proof of claim against Debtors in this bankruptcy case.  This argument confuses the concepts of "liability", "debt", "allowed claim" and the effect of "discharge".  As explained in more detail below, because the chapter 11 plan in this case is a corporate liquidation plan, the only consequence of failure to file a timely proof of claim is that McMoRan cannot recover from the Plan Trustee.  The claim against Debtors is not affected.

A "claim" is a right to payment.[8]  "Debt" means liability on a claim.[9]  The debt/claim for gas imbalances in this case arises under the contract between the parties -- a matter of state contract law, not bankruptcy law.  With respect to the dispute between Debtors and McMoRan, Debtor's liability *vel non* is determined by the contractual arrangement, not by deadlines for filing proofs of claim.  Bankruptcy law (including the deadlines for filing a proof of claim) determines a claimant's right to be paid from the bankruptcy estate; only "allowable" claims are paid under the confirmed chapter 11 plan; the fact that a claim is not an "allowable claim" does not mean that there is no claim and no debt.  It merely means that the claim will not be paid under the plan.

Debts that a debtor lists on chapter 11 bankruptcy schedules as liquidated, undisputed, and non-contingent are automatically classified as "allowed claims."  Whether or not a creditor's claims are listed on a debtor's bankruptcy schedules, the creditor may file a claim that will be deemed to be an "allowed claim"[10] unless a party in interest objects.[11]  One of the bases for objection is failure to file the claim timely.[12]  As noted, allowance of claims in chapter 11 cases is important because only allowed claims are paid under confirmed chapter 11 plans. [13]

If confirmation and consummation of the chapter 11 plan results in the debtor receiving a discharge, then a creditor who did not file a claim timely may suffer double adverse consequences.  First, the creditor is not paid under the plan.  Second, the debt is discharged even though no payment is made under the plan. [14]  The discharge does not affect the validity of the debt or the liability of the debtor; it merely prohibits collection efforts against the reorganized

---

[7] Much of Debtors' complaint and its opposition to McMoRan's motion for summary judgment seem more in defense of Hoactzin than in it's own defense.  No one has raised the issue of standing, and the Court has not raised the issue on its own because the arguments seem to be confused defenses of the plan trust rather than defenses of Debtors.

[8] Bankruptcy Code § 101(5).

[9] Bankruptcy Code § 101(12).

[10] Bankruptcy Code § 502(a).

[11] Bankruptcy Code § 502(b).

[12] Bankruptcy Code § 502(b)(9).

[13] In this bankruptcy case, for example, only class 6 allowed claims can be paid from the Plan Trust.

[14] BankruptcyCode § 1141(d)(1).

debtor and its assets.[15]  In those cases, therefore, a claim that was not timely filed may not be collectible either under the terms of the plan or from the debtor outside of the plan.[16]  However, the discharge does not affect the liability of any other entity on the debt.[17]  If another party is liable on the debt, neither the disqualification of the claim as an "allowed claim" nor the discharge affects the liability of the third party on the debt.

Debtors in this case, however, are not entitled to discharges because Debtors are corporations and their chapter 11 plan is a liquidating plan.[18]  The only adverse consequence to McMoRan for not filing a timely proof of claim is that McMoRan cannot get a distribution from the Plan Trust.  Debtor's liability under the contract is not discharged.  Liability of co-obligors is not affected.

While the Court doubts the value of a non-dischargeble claim against a corporation without assets, the Court will award judgment for the gas imbalance that accrued prior to the effective date of the sale.  No one has suggested that Debtor is liable for gas imbalances that accrued post-consummation of the sale.

2.      Rejection of Executory Contracts

There was some allusion in Debtors' complaint to McMoRan's claim being precluded by an order approving the rejection of executory contracts.  However, as Debtors admitted, they abandoned their motion to reject executory contracts.  Therefore, the Court concludes that this argument must also be abandoned.  Even if it was not, a claim relating to rejection of an executory contract must be filed only to make the claim an "allowed" claim payable out of the estate.  Failure to file a claim timely does not eliminate the claim; it merely precludes the claim from becoming an allowed claim in chapter 11.

3.      Estoppel and Laches

Debtors argue, without citation of evidence or legal authority, that McMoRan's claims are barred by estoppel or laches.  McMoRan has presented arguments that the claims were not tardy, at least as to Hoactzin.  Debtors have not even alleged that McMoRan's delay in making the claims somehow disadvantaged or injured Hoactzin.  There is no authority or basis for sustaining the estoppel and laches arguments.

---

[15] *Id. and see* Bankruptcy Code § 524.  No party has argued that Bankruptcy Code § 524(g) are applicable, and it appears that the section is, by its terms, not applicable.

[16] Even in those situations, however, the bankruptcy discharge would not prohibit collection of the debt

[17] Bankruptcy Code § 524(e).

[18] Upon confirmation of Debtors' plan on July 1, 2009, all of Debtors' assets transferred to a plan trustee for benefit of creditors with allowed class 6 claims (*i.e.* allowed unsecured creditors).  Debtors' chapter 11 plan provides for the liquidation of all, or substantially all, of Debtors' property.  Debtors did not engage in business after consummation of the plan.  Debtors are corporations and therefore would be denied a discharge under Bankruptcy Code § 727(a) if this were a case under chapter 7.  Therefore, Debtors did not receive and will not receive bankruptcy discharges, Bankruptcy Code § 1141(d)(3).

4.       Barred by the Plan and Applicable Bankruptcy Law

Debtors also argue, without adequate citation of evidence or legal authority, that the claims are barred by the Plan and by applicable bankruptcy law.  The Court thinks that Debtors are suggesting that their debt to McMoRan is discharged by confirmation of the plan.  As noted above, Debtors are not entitled to a discharge in this case.  Even if they were, discharge does not affect third party liability.

5.       Third Party Beneficiary

Although the Third Party Beneficiary argument is really for Hoactzin's benefit, Debtors are the spokesmen for the argument, presumably in the context of their request for injunctive relief.  Therefore their argument is addressed in this part of the opinion.

Debtors argue that the PSA explicitly excludes third party beneficiaries, and therefore McMoRan is not entitled to the benefit of Hoactzin's assumption of Debtors' liability.  The parties agree that the plain language of the contract controls and that ambiguity exists only if it is clear from the contract, not because it could arguably be interpreted to be ambiguous.

The Court notes that there are two paragraphs relating to gas imbalances.  Paragraph 16.01 states that Hoactzin assumes the debt.  It does not limit Hoactzin's liability for Gas Balancing to adjustment of the purchase price or to another type of compensation to Debtors. The contract unambiguously makes Hoactzin liable for the debt:

> …[G]as-production-imbalance accounts and related agreements
> will accrue to and become Buyer's responsibility.

The contract language is unambiguous.  Hoactzin is liable for the debt.

Paragraph 17.02 provides a completely separate mechanism for the obligations between Hoactzin and Debtors related to gas balancing imbalances.  Reading the contract in whole and in context, the Court does not see a clear conflict.  Hoactzin can both assume gas imbalance obligations and separately have a settling-up with Debtors.

6.       Conclusion

Therefore, McMoRan's motion for summary judgment against Debtors is granted. McMoRan is awarded judgment against Debtors for gas balancing that is their responsibility and Debtors' request for injunctive relief is denied.

B.       McMoRan's Motion for Summary Judgment On Its Cross-Claim Against Hoactzin

1.       Hoactzin Assumed Liability for Debtor's Gas Imbalance Obligations

The language of paragraph 16.01 of the PSA is clear.  Hoactzin assumed liability for the gas imbalance liability as of August 11, 2008.  Hoactzin did not merely agree to adjust the PSA purchase price because of an imbalance, Hoactzin assumed liability for the imbalance.

Hoactzin's response to McMoRan's motion for summary judgment does not deny its liability under the precise language of the PSA.

      2.      Hoactzin's Makes Two Arguments In Its Response to McMoRan's Motion For Summary Judgment

          a.      Indemnity and Contribution

First, Hoactzin argues that if it is liable to McMoRan, then Debtor is liable to Hoactzin for indemnity and contribution. The Court will address those issues separately, below, in addressing Hoactzin's motion for summary judgment. But Debtors' liability for indemnity and contribution under the PSA is not relevant to Hoactzin's liability to McMoRan, *vel non*, under the PSA.

          b.      "Timeliness and Manner" of Asserting McMoRan's claim

In paragraph 4 of Hoactzin's response to McMoRan's motion for summary judgment, Hoactzin asserts that "if Capco prevails on its claims or defenses against McMoRan, Hoactzin should have no liability to McMoRan.

For reasons set forth above, the Court concludes that Debtors are indeed indebted to McMoRan.

Because Hoactzin's assumption of liability is clear and because it has not asserted any legally cognizable defense, by separate written document the Court has awarded McMoRan final judgment on its claim against Hoactzin.

      3.      Hoactzin's Liability for Gas Balancing After August 11, 2008

Hoactzin's argument against McMoRan's claims relates to Debtor's liability and to assertion of McMoRan's claims in the bankruptcy case. Hoactzin clearly became the owner of the working interest on August 12, 2008, and the Court sees no good argument in Hoactzin's memorandum suggesting that it is not liable for gas imbalances after that date.

      4.      Conclusion

Therefore, McMoRan's motion for summary judgment against Hoactzin is granted.

C.      Hoactzin's Motion For Summary Judgment Against Debtors

Hoactzin argues that if it is liable to McMoRan, then Debtors are liable to Hoactzin for indemnity and contribution.

      1.      Distinction Between Debtors and Plan Trust

The Court believes that Hoactzin actually seeks judgment against the Plan Trust, not against Debtors, because the Plan Trust has assets and Debtors have no assets. But the Plan

Trust is not a party to this adversary proceeding.[19]  Awarding Hoactzin judgment against the Plan
Trust is not possible in this adversary proceeding.

But even if the Plan Trust were a party, the Plan Trust is only liable for allowed claims.
Hoactzin has not filed a proof of claim, and therefore Hoactzin does not have an allowed claim
against the Plan Trust.

2.      Hoactzin's Claim Against Debtors

Debtors are parties to this adversary proceeding.  But Hoactzin's claim against Debtors is
not timely under the contract.[20]  Paragraph 17.01 of the contract requires Hoactzin (Buyer) to
assert its indemnity claims within 90 days of the closing.  Presumably Hoactzin and Debtors
complied with the provisions of paragraph 17.01 when the PSA was consummated.[21]  If Closing
Settlement Statements were presented and reconciled, it is now too late for Hoactzin to make its
claim against Debtors.  As noted by Debtors, the PSA controls over the attached form of Bill of
Sale.[22]

Therefore, Hoactzin's counterclaim against Debtors is denied.

3.      Hoactzin's Claim Agsinst Debtors Might Be Moot

In any event, if Hoactzin were to prevail on its indemnity and contribution claims against
Debtors, it would probably be a Pyrrhic victory.  Hoactzin would get a judgment against an
entity that has no assets.  Debtors will not get a discharge but, that does not mean that there are
assets to satisfy Hoactzin's claim.  All of Debtors' assets were transferred to the Plan Trust for
the benefit of allowed class 6 claimants.  If Hoactzin were to prevail on its claim against Debtors,
the claim would be a nondischargeable claim against Debtors that have no assets.

CONCLUSION

By separate final judgment issued this date, McMoRan's claims against Hoactzin are
granted and all other claims in this adversary proceeding are denied.

SIGNED 01/04/2011.

_____
Wesley W. Steen
United States Bankruptcy Judge

---

[19] The plan trustee filed this adversary proceeding on behalf of Debtors, not as trustee of the Plan Trust.

[20] A proof of claim would also not be timely, but that is not at issue because Hoactzin has not filed a proof
of claim.

[21] No party has suggested or provided summary judgment evidence that this Closing Settlement was not
accomplished.

[22] See paragraphs 14 and 15 of Debtors' response to Hoactzin's motion for summary judgment.